IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

STEPHEN ALAN MACOMBER,

    Petitioner,

    v.                              CASE NO. 19-3012-SAC

RON BAKER, Warden,
Lansing Correctional Facility,

    Respondent.

**MEMORANDUM AND ORDER**

Petitioner, a state prisoner, filed this pro se petition for writ of habeas corpus under 28 U.S.C. § 2241. Petitioner challenges his prison disciplinary proceedings while incarcerated at the Lansing Correctional Facility in Lansing, Kansas. Petitioner seeks to have his disciplinary conviction reversed and remanded or vacated.

**I. Factual Background**

On December 22, 2016, Petitioner received a Disciplinary Report ("DR") for Threatening and Intimidating and Disruptive Behavior. (Doc. 1–1, at 5.) The sworn DR provides that:

> On 12/22/16 at approximately 0513 hours I (CSI Cawthorn) was at L-210 in response to a medical emergency that had been called by Offender Macomber 44362. While I was at the cell Offender Macomber stated saying that I had better get the full response team [here] because some "shit" was going to happen when the door opened. As I was at the cell door I was directing other offenders to lock down. Offender Macomber began yelling at the other offenders encouraging to not to lock down and to set this "shit" off. Fortunately, the other offenders did not listen to Offender Macomber. Based on the above facts I (CSI Cawthorn) am charging Offender Macomber with 44-12-306, Threatening and Intimidating a Class I Offense, 44-12-318 Disruptive Behavior a Class II Offense.

*Id.* The DR shows that Petitioner received a copy of the DR on December 22, 2016, at 0809. *Id.*

Petitioner's attachments show that prior to the hearing, he requested two witnesses at his Disciplinary Hearing—a staff witness and an inmate witness. (Doc. 1–1, at 17.) The request form shows that the staff witness was to testify that she was unable to identify which of the two inmates in the cell made a threatening comment. *Id*. The inmate, Petitioner's cellmate, would testify that Petitioner never made any threatening statements. Sgt. Johnson commenced the hearing on December 28, 2016, and questioned Petitioner and allowed Petitioner's cellmate to testify. Petitioner's cellmate testified that Petitioner did not make the threatening statements, but Petitioner alleges that when the cellmate started to testify that he was actually the one that made the statements, the hearing officer would not let him finish his statement and "failed to indicate so in the disciplinary record." *Id*. at 3. Petitioner waived his right to call the staff witness, and the hearing was continued to the next day in order to hear the testimony of the 3rd shift officers who were present at the cell where the incident occurred. *Id*. at 3, 17. On December 29, 2016, Lt. McGuire conducted the rest of the hearing, allowing Sgt. Cawthorn and Petitioner to testify. The second 3rd shift officer, who Petitioner states was his staff witness, did not testify. Petitioner was found guilty of the disciplinary violations and received a fine and privilege restrictions. *See* Doc. 1–1, at 10 (record of testimony).

## II. Analysis

To obtain habeas corpus relief, an inmate must demonstrate that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S. C. § 2241(c)(3). While § 2241 does not contain an express exhaustion requirement, Tenth Circuit precedent requires a state prisoner challenging the execution of his sentence pursuant to 28 U.S.C. § 2241 to exhaust available state court remedies prior to filing a federal habeas petition. *See Hamm v. Saffle,* 300 F.3d 1213, 1216 (10th Cir. 2002) (citing *Montez v. McKinna,* 208 F.3d 862, 866 (10th

Cir. 2000). Respondent acknowledges that Petitioner has exhausted his state court remedies. (Doc. 12, at 3.)

Habeas claims made under § 2241 are reviewed de novo. *Walck v. Edmondson*, 472 F.3d 1227, 1235 (10th Cir. 2007).[1] "[W]hat is needed in order for § 2254(d) to apply is a state court adjudication on the merits of *a claim challenging a state conviction and/or sentence* brought forth by an individual in state custody." *Id*. at 1234–35 (emphasis added) ("The deferential standard of review contained within § 2254 is . . . only properly invoked when an individual in state custody collaterally attacks the validity of a state conviction and/or sentence."); *see also Leatherwood v. Allbaugh*, 861 F.3d 1034, 1042 (10th Cir. 2017) (reviewing state court's denial of claims under § 2241 de novo and finding the standard less demanding than § 2254(d)) (citing *Phillips v. Court of Common Pleas, Hamilton Cty.*, 668 F.3d 804, 810 (6th Cir. 2012) ("[H]abeas petitions governed by § 2241 are not subject to the heightened standards contained in § 2254(d)"); *Martinez v. Caldwell*, 644 F.3d 238, 242 (5th Cir. 2011) ("The deferential standard afforded to state court decisions, which is specifically articulated in § 2254, is not included in the text of § 2241.")). Accordingly, the undersigned declines to apply § 2254's deferential standard to this § 2241 action.

---

[1] *But see Henderson v. Scott*, 260 F.3d 1213, 1215 (10th Cir. 2001) ("Although we analyze Mr. Henderson's claim under § 2241, we still accord deference to the [Oklahoma Court of Criminal Appeals'] determination of the federal constitutional issue."); *Gilkey v. Kansas Parole Bd.*, 318 F. App'x 620, 621 (10th Cir. 2008) (unpublished); *Brown v. Ulibarri*, 298 F. App'x 746, 748–49 (10th Cir. 2008) (unpublished) (citing and applying the 28 U.S.C. § 2254(d) deferential standard of review to state prisoner's challenge under § 2241 to state court decisions regarding withholding and forfeiture of good time credits); *Preble v. Estep*, 190 F. App'x 697 (10th Cir. 2006) (unpublished) (applying the deferential standard in 28 U.S.C. § 2254(d) to a state prisoner's habeas petition under 28 U.S.C. § 2241 challenging a disciplinary conviction); *Branham v. Workman*, Civil No. 05-6222, 2006 WL 950656, *1 (10th Cir. Apr. 13, 2006) (unpublished) ("applying the deferential standard required by 28 U.S.C. § 2254(d), (e)(1)" in a habeas petition arising under § 2241 for a disciplinary conviction); *Aquiar v. Tafoya*, 95 F. App'x 931, 932 (10th Cir. 2004) (unpublished)(in habeas petition under § 2241 challenging disciplinary conviction stating that the applicable standard is "set forth under 28 U.S.C. § 2254(d)"); *Watters v. Ray*, 175 F. App'x 212, 214 n. 1 (10th Cir. 2006) (unpublished) (noting agreement with the district court's determination that the standard in 28 U.S.C. § 2254(d)(1) would apply . . . to a state inmate's habeas petition under § 2241 for challenge to a disciplinary conviction).

Petitioner alleges that he was denied due process at his disciplinary hearing: 1) because his bifurcated disciplinary proceeding had two Disciplinary Hearing Officers ("DHOs") presiding over the hearing and the DHO rendering the decision did not hear the testimony of Petitioner's witness; 2) when the testimony of his witness was restricted by the first DHO; and 3) because the DHOs were not impartial because Petitioner previously had physical altercations with both DHOs.

A prisoner's due process rights are limited. "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell,* 418 U.S. 539, 556 (1974). An inmate receives due process in conjunction with an institutional disciplinary proceeding if he is given: "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Superintendent, Mass. Corr. Inst., Walpole v. Hill,* 472 U.S. 445, 454 (1985) (citations omitted). If these protections are provided and there is "some evidence" to support the resolution of the disciplinary charge, then the Due Process Clause's procedural requirements have been satisfied. *Id.; Mitchell v. Maynard*, 80 F.3d 1433, 1445 (10th Cir. 1996) (noting that the scope of a court's due process review of a prison disciplinary proceeding is limited to determining whether *Wolff"s* requirements are met and there is some evidence to support the decision).

Petitioner does not allege that he did not receive advance written notice of the disciplinary charge, or a written statement of the evidence relied on and the reasons for any disciplinary action. Although Petitioner acknowledges that he waived his right to call his staff

4

witness, and that his inmate witness (his cellmate) was allowed to testify, he alleges that his cellmate was not allowed to finish his testimony. Petitioner alleges that his cellmate would have testified that he was the one who made the statements in question. The witness request form, however, only sets forth that the cellmate's testimony will be that Petitioner did not make threatening statements. (Doc. 1–1, at 17.)

The Court does not find that Petitioner's due process rights were violated when the testimony of his cellmate was restricted. To provide due process, prison officials must give an inmate facing disciplinary proceedings the opportunity "to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff,* 418 U.S. at 566. "[A] prisoner cannot maintain a due process claim for failure to permit witness testimony unless he also shows that the testimony 'would have affected the outcome of his case.'" *Bird v. Pacheco*, 729 F. App'x 627, 630–31 (10th Cir. 2018) (unpublished) (citing *Chesson v. Jaquez*, 986 F.2d 363, 366 (10th Cir. 1993)).

"The scope of a prisoner's right to call and confront witnesses is committed to the sound discretion of prison officials" and prison officials must make the determination on an individual basis. *Ramer v. Kerby,* 936 F.2d 1102, 1104 (10th Cir.1991). In *Wolff,* the Supreme Court recognized that "the unrestricted right to call witnesses from the prison population carries obvious potential for disruption," stating that:

> We should not be too ready to exercise oversight and put aside the judgment of prison administrators. It may be that an individual threatened with serious sanctions would normally be entitled to present witnesses and relevant documentary evidence; but here we must balance the inmate's interest in avoiding loss of good time against the needs of the prison, and some amount of flexibility and accommodation is required. Prison officials must have the necessary discretion to keep the hearing within reasonable limits

> and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence. Although we do not prescribe it, it would be useful for the Committee to state its reason for refusing to call a witness, whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases. Any less flexible rule appears untenable as a constitutional matter, at least on the record made in this case. The operation of a correctional institution is at best an extraordinarily difficult undertaking. Many prison officials, on the spot and with the responsibility for the safety of inmates and staff, are reluctant to extend the unqualified right to call witnesses; and in our view, they must have the necessary discretion without being subject to unduly crippling constitutional impediments. There is this much play in the joints of the Due Process Clause, and we stop short of imposing a more demanding rule with respect to witnesses and documents

*Wolff,* 418 U.S. at 566-567.

"Prison officials are not required to make a written record of the reasons for granting or denying a prisoner's request to call or confront a particular witness." *Ramer,* 936 F .2d at 1104. Instead, all that due process requires is for prison officials to make the decision to permit or prohibit an inmate from calling or confronting a particular witness on a case-by-case basis according to legitimate penological considerations. *Id.* at 1104-1105; *see also* K.A.R. 44-13-403(n) (request to call a witness may be denied or the testimony reasonably and fairly restricted under certain circumstances).

Petitioner also alleges that the DHOs were not impartial because he had a physical altercation with each one in the past. Petitioner does not elaborate on the prior incidents, or suggest that they relate to his DR at issue in this case. "An impartial decisionmaker is a fundamental requirement of due process" and "should be decided on a case-by-case basis." *Gwinn v. Awmiller,* 354 F.3d 1211, 1220 (10th Cir. 2004) (citations omitted). Moreover, "'because honesty and integrity are presumed on the part of a tribunal, there must be some

substantial countervailing reason to conclude that a decisionmaker is actually biased with respect to factual issues being adjudicated.'" *Id.* (quoting *Tonkovich v. Kansas Bd. of Regents,* 159 F.3d 504, 518 (10th Cir.1998)). Instead, a due process violation occurs only when the facts demonstrate "the risk of unfairness is intolerably high." *Gwinn*, 354 F.3d at 1220 (citation omitted); *see also Green v. Dorrell,* 969 F.2d 915, 919 (10th Cir. 1992) ("[A]dverse rulings against a litigant cannot in themselves form the appropriate grounds for disqualification.").

In light of this standard, Petitioner's bare allegations impugning the DHOs' impartiality do not overcome the presumption that they acted with honesty and integrity at the hearing. Petitioner's allegations of bias are wholly speculative and conclusory, and he fails to support his claim with any specific factual allegations. Petitioner has failed to allege facts sufficient to demonstrate the risk of unfairness was intolerably high or the existence of actual bias. Petitioner does not allege that either DHO was involved in the investigation of the DR or in the prosecution of the case. *See generally Wolff,* 418 U.S. at 592 (Marshall, J., concurring) ("[D]ue process is satisfied as long as no member of the disciplinary board has been involved in the investigation or prosecution of the particular case, or has any other form of personal involvement in the case.") Therefore, Petitioner's claim that his due process rights have been violated based on the alleged bias of the hearing officers is without merit and denied.

The Court finds that Petitioner received all of the due process required by *Wolff* and he has failed to show that the DHOs were not impartial. Petitioner has likewise failed to show that having two DHOs conduct his hearing violated due process. The procedure for inmate disciplinary hearing sis set out in K.A.R. 44-13-101, and provides in part that "[c]ontinuances and recesses of the hearing may be granted," and "[a]ll stages of the disciplinary hearing shall be conducted by a hearing officer appointed by the warden." K.A.R. 44-13-101(h) and (j). The

regulations also provide that "[o]ne or more impartial hearing officers shall be appointed by the warden to conduct disciplinary hearings at each department-operated facility," and that hearing officers must receive training and "[a] person who is the reporting officer, investigator, or a witness in a case shall not be the hearing officer in that case." K.A.R. 44-13-105(b). Petitioner has pointed to nothing in the regulations or case law that would prohibit a continuance of the hearing or the use of a different hearing officer. Petitioner has not alleged that the second DHO did not review the record prior to making his decision.

The Court also finds that there was some evidence to support the disciplinary decision. When reviewing whether the evidence was sufficient in the context of a prison disciplinary proceeding, the sole question is whether there was "some evidence" supporting the DHO's decision:

> [T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary [hearing officer] to revoke good time credits. This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced . . .." Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is **any evidence** in the record that could support the conclusion reached by the disciplinary board.

*Hill,* 472 U.S. at 455-56 (quoting *United States ex rel. Vajtauer v. Comm'r,* 273 U.S. 103, 106 (1927)) (emphasis added). The decision may be upheld even if there is only "meager" evidence to support it. *Id.* at 457; *Mitchell v. Maynard,* 80 F.3d 1433, 1445 (10th Cir. 1996). The DR and the reporting officer's testimony provide "some evidence" to support the disciplinary decision. *See Longstreth v. Franklin,* 240 F. App'x 264, 267 (10th Cir. 2007) (unpublished) (finding that inmate's prison disciplinary proceeding due process claim "fails because the incident report was 'some evidence.'").

Under Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Because the Court denies the Petition, the Court must decide whether to issue a certificate of appealability. A certificate of appealability should issue "only if the applicant has made a substantial showing of the denial of a constitutional right," and the Court identifies the specific issue that meets that showing. 28 U.S.C. § 2253(c)(2) and (3). A petitioner can satisfy this standard by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," or that the issues presented in the petition are "adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983), *superseded in part by* 28 U.S.C. § 2253).

Here, the Court declines to issue a certificate of appealability. Nothing suggests that the Court's rulings in this case are debatable or incorrect, and no record authority suggests that the Tenth Circuit would resolve this case any differently. While it declines to issue the certificate, the Court notes that Petitioner may not appeal the denial of a certificate but he still may seek a certificate of appealability from the Tenth Circuit. *See* Rules Governing Section 2254 Cases, Rule 11(a).

**IT IS THEREFORE ORDERED BY THE COURT** that the Petition is **denied.**

**IT IS FURTHER ORDERED** that a certificate of appealability is **denied.**

**IT IS SO ORDERED**.

D**ated this 23rd day of August, 2019, at Topeka, Kansas.**

                                                                    s/ Sam A. Crow
                                                                    Sam A. Crow
                                                                    U. S. Senior District Judge